# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

UNITED STATES OF AMERICA, the STATE
OF FLORIDA, and the STATE OF MONTANA,
*ex. rel.*, ROBERT WATINE, M.D.,

    Plaintiffs,

v().                                    Case No. 1:09-CV-137-SPM-GRJ

CYPRESS HEALTH SYSTEMS FLORIDA, INC.,
and CYPRESS HEALTH SYSTEMS, LLC,

    Defendants.
_____/

## **ORDER**

THIS CAUSE comes before the Court on a Motion to Dismiss (doc. 26) filed by Defendant Cypress Health Systems LLC (Cypress Wyoming) and a Motion to Dismiss (doc. 31) filed by Defendant Cypress Health Systems Florida, Inc. (Cypress Florida) asking this Court to dismiss Plaintiff Robert Watine's (Plaintiff) *qui tam* Complaint (doc. 1).[1] Plaintiff responded to both, opposing Cypress Wyoming's Motion to Dismiss (doc. 34) and opposing Cypress Florida's Motion to Dismiss (doc. 37). Concurrent with filing his opposition to Cypress Florida's Motion to Dismiss, Plaintiff filed a Motion to Amend his Complaint if Necessary (doc. 38). Both Cypress Wyoming (doc. 40) and Cypress

---

[1] As a *qui tam* plaintiff, Watine sues on behalf of the government in this case. The government has decided to not to intervene in this action at this time, but has reserved this right to intervene in the future.

Florida (doc. 39) filed their respective opposition.[2]  Based on the following reasons, both defendants' Motions to Dismiss are GRANTED.

## I. BACKGROUND

Plaintiff brings this cause of action, on behalf of the United States, the state of Florida and the state of Montana, pursuant to the provisions of the federal False Claims Act (FCA), 31 U.S.C. §§ 3729-32, the Florida False Claims Act, Fla. Stat. §§ 68.081-086, and the Montana False Claims Act, MT ST 17-8-406(1) and 17-8-401(1)(a) and (b). Specifically, Plaintiff alleges that Defendant Cypress Wyoming and Defendant Cypress Florida engaged in acts, schemes and billing practices with the aim and result of defrauding various government healthcare programs, mainly the United States Medicare Trust Fund as well as Montana Medicaid and Florida Medicaid programs.  Cypress Florida, where Plaintiff was employed from March 2008 until April 2008, owns and operates a 40-bed acute care for-profit hospital, known as Nature Coast Regional Hospital, in Williston, Florida.  Cypress Wyoming manages, but does not own, a 19-bed rural hospital, known as Powell County Memorial Hospital, in Deer Lodge, Montana.

Medicare establishes a system through which hospitals obtain reimbursement for services they provide to Medicare beneficiaries.  To obtain reimbursement, hospitals submit claims of payment to Medicare.  These claims are based on discharge summaries

---

[2] Because of the overlap between all three motions and respective responses, the Court will respond in one collective order.

prepared when the Medicare beneficiary and hospital patient is discharged from the hospital's service.  Medicare pays the hospital a pre-determined amount based on the Diagnosis Related Group (DRG) Code assigned to each patient.  Some DRG Codes pay a significantly higher amount than others.  Further, where the patient was seen (i.e. the patient's "place of service") will also result in different reimbursement amounts.  Plaintiff's allegations of fraud concern the submission of allegedly fraudulent bills to maximize Medicare reimbursements through fraudulent "upcoding" of a patient's DRG Code, fraudulently reporting patient's place of service, and fraudulently churning a patient's diagnosis, testing, treatment and medication.

Throughout his employment with Cypress Florida, Plaintiff alleges that the physicians who worked there were instructed to bill the highest paying DRG Codes for the purpose of receiving the highest amount of reimbursement.  As an incentive, the physicians who reported these higher paying, but false, DRG Codes would receive higher bonuses.  Plaintiff alleges that the administrative personnel of Cypress Florida, along with posting the highest paying DRG Codes, also verbally told employees to bill more of these Codes.  Plaintiff alleges that he was even directly remonstrated by the hospital administrator, Alan Bird, for failing to follow the fraudulent scheme.

However, Plaintiff was not convinced that such fraudulent billing was actually occurring until the hospital administration asked him to review twenty-five Explanation of Benefits or Medicare Summary Notices (EOBs) and then write a letter to the Medicare

Intermediary appealing the denial of claims. Throughout this process of review, Plaintiff alleges that he was unable to write a single letter appealing the denial of claims because all of the DRG Codes submitted were incorrect.

Plaintiff, on his own initiative, randomly pulled sixteen patient history charts, reflecting a seven year period. These charts, which Plaintiff alleged used DRG Codes that were false but higher paying than the Code that should have been used, had been apparently submitted to Medicare, or another government healthcare program, for reimbursement. Plaintiff asserts that this practice of "upcoding" with false DRG Codes is a violation of the FCA.

Further, Plaintiff alleges that he was encouraged to see patients at the Williston Rehabilitation & Nursing Center, LLC (Nursing Home) several days a week. Plaintiff made these visits weekly. However, Plaintiff alleges that because reimbursements for seeing patients at the hospital were higher than reimbursements for seeing patients at the Nursing Home, Cypress Florida billed these Nursing Home patient visits as if the patient was seen at the hospital. Plaintiff alleges that of the 125 patients that he and another physician saw at the Nursing Home, all 125 were billed as having been seen at the hospital. Moreover, when Plaintiff asked the administrator Alan Bird why his Nursing Home visits weren't reflected in his physician compensation sheet, Bird replied that the visits were incorporated into the hospital visits.

Finally, Plaintiff alleges that he was constantly berated and admonished for not adhering to the Cypress Florida business plan of fraudulently churning patient visits. Because Medicare would pay a higher reimbursement amount for each office visit a patient made, the business plan was to separate patient diagnosis, testing, surgery, treatment and medication into separate office visits to maximize out-patient clinic revenue. Plaintiff alleges that Bird explained to him the eight step plan for how to conduct this churning.

On April 7, 2009, the Plaintiff provided to the United States Government the information contained in his Complaint pursuant to 31 U.S.C. 3730(b)(2). On August 2, 2010, after the Government reviewed the Complaint and decided not to intervene, this Court ordered that the Complaint be served on all defendants.

## II. DISCUSSION

### A. Heightened Pleading

*Standard*

The Federal Rules of Civil Procedure require that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to actions brought pursuant to the FCA. United States *ex rel.* Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308-09 (11th Cir. 2002). To meet the standard of pleading with

particularity, the "plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud . . . ." United States *ex rel.* Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006) (internal citations omitted). Specifically, this means pleading the "details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Id. (internal citations omitted); United States *ex rel.* Cooper v. Blue Cross & Blue Shield of Fla., 19 F.3d 562, 567 (11th Cir. 1994).

Merely pleading false practices or fraudulent schemes alone is insufficient to state a claim pursuant to the FCA. United States *ex rel.* Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1328 (11th Cir. 2009). Rather, a plaintiff must show that the government paid, or that the defendant submitted to the government to be paid, a false claim. Id. The submission of a false claim is the "*sine qua non* of a False Claims Act violation." Clausen, 290 F.3d at 1311.

### *Cypress Florida*

Plaintiff's claims concerning fraudulent "upcoding" stem from allegations that he overheard conversations concerning the fraudulent billing practice, he was exhorted by a superior telling him to bill higher DRG codes, he was asked to review twenty five EOBs that contained false DRG codes and he performed his own random survey of sixteen patient charts which used false DRG codes. However, none of Plaintiff's allegations reach the requisite level of specificity as required by the Rule 9(b) heightened pleading standard.

With regard to the twenty five EOBs that Plaintiff reviewed, Plaintiff makes general comments concerning their accuracy, and as to a select few, specifically cites reasons for the errors, but does not provide any specific details about their allegedly false submission to a government healthcare program.  The EOBs were not attached to Plaintiff's complaint and Plaintiff has failed to allege the amount of the claims, who submitted the claims, and when the claims were submitted.  Although in Plaintiff's review of the EOBs he allegedly could find no support for the use of the higher paying DRG codes, by failing to allege the details concerning how these EOB claims were actually submitted, Plaintiff has failed to meet the heightened pleading standard.  Plaintiff has failed to include the "details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Atkins, 470 F.3d at 1357 (internal citations omitted).

Similarly, Plaintiff's allegations concerning the sixteen patient charts he reviewed are insufficient.  Plaintiff alleges that the improper DRG code was used when diagnosing the patient.  However, Plaintiff fails to allege the particulars surrounding the submission of claims to a government healthcare program as a result of the improper use of these DRG codes.  Without these details, Plaintiff cannot meet Rule 9(b)'s heightened pleading standard.

Plaintiff's second main allegation of fraud concerns false place of service claims. Plaintiff bases these allegations of fraudulent false place of service on two attached

records reflecting two patient visits made by Plaintiff. However, these records are internally-generated records and Plaintiff provides no details as to how these claims were submitted, when the claims were submitted, and to whom these claims were submitted. Plaintiff provides no indication as to how these records were billed. The only detail that Plaintiff includes is a reference to a general header that says "Clinic Outpatient Record." The attached exhibits themselves make no account for how these claims were submitted and even if the claims were submitted.

Plaintiff also attached a compensation sheet to support his allegations of false place of service claims. Regarding this sheet, Plaintiff alleges that Bird explained that no nursing home visits were recorded on the compensation sheet because they were incorporated into out-patient clinic visits. However, this explanation only attests to a general scheme of fraud. Plaintiff does not provide any details concerning actually submitted claims in connection with the alleged fraudulent place of service nursing home visits. Allegations of a fraudulent scheme, alone, are not enough to meet the heightened pleading standard, see Hopper, 588 F.3d at 1328, and without the requisite details as to the claims' submission, these allegations fail to plead with particularity as required by Rule 9(b).

Plaintiff's final allegation of fraudulent churning is supported only by the allegation that he was berated by Bird for not fraudulently churning patients. Plaintiff alleges that Bird then explained the "business plan" for why and how churning should

occur.  However, although Plaintiff alleges he was told the particulars of the fraudulent scheme, Plaintiff again fails to include the details of any falsely submitted claims for payment based on this scheme.  Standing alone, allegations of an improper billing scheme, which may result in the submission of false claims, is not enough to satisfy Rule 9(b).  See United States *ex rel.* Hopper v. Solvay Pharm., Inc., 590 F. Supp. 2d 1352, 1359 (M.D. Fla. 2008) (finding that it is not the law of the Eleventh Circuit that allegations of false or fraudulent claims "from which it can be inferred that a false claim was submitted to government" satisfy Rule 9(b)'s pleading with particularity requirement), aff'd 588 F.3d 1318 (2009), cert. denied 130 S. Ct. 3465 (2010).  Since Plaintiff has failed to allege the particulars of any claim falsely submitted under this scheme of fraudulently churning patients, Plaintiff has failed to adequately plead fraudulent churning as required by Rule 9(b).

Similar to the pleading the court found insufficient in Atkins, Plaintiff "portrays the scheme and then summarily concludes that the defendants submitted false claims to the government for reimbursement."  Atkins, 470 F.3d at 1359.  By failing to show that Cypress Florida "*actually submitted* reimbursement claims for the services he describes," Plaintiff has failed to meet the standard to plead fraud with particularity.  Id. (emphasis in original).  Thus, Plaintiff has failed to state a cause of action against Cypress Florida upon which relief could be granted.

*Cypress Wyoming*

Necessarily, because Plaintiff has failed to plead with particularity against Cypress Florida, Plaintiff's allegations also fail to meet the heightened pleading standard of Rule 9(b) as to Cypress Wyoming. All of Plaintiff's allegations against Cypress Wyoming are based off of allegations against Cypress Florida. Since those allegations are deficient, there are no claims against Cypress Wyoming upon which Plaintiff can state a cause of action.

Moreover, even if all of Plaintiff's allegations against Cypress Florida were sufficient, Plaintiff would still fail to meet the heightened pleading standard as to Cypress Wyoming. Plaintiff has no independent or specific allegations linking Cypress Wyoming to the actions of Cypress Florida. In fact, Plaintiff has no real allegations against Cypress Wyoming at all. All of the patient files, the review of the Medicare appeals, and the generalized fraudulent scheme occur at the hospital owned by Cypress Florida.

These allegations fail to specifically allege fraud against Cypress Wyoming and fail to allege the details of any fraudulently submitted claims. Indeed, Plaintiff's only real reference to Cypress Wyoming is a statement made by Bird who allegedly stated that Cypress Wyoming doctors, who were a part of the Cypress "system," received the highest bonuses by following the same fraudulent scheme in place at Cypress Florida. Yet, as stated by the Eleventh Circuit, "[i]mproper practices standing alone are insufficient to state a claim" under the FCA. <u>Hopper</u>, 588 F.3d at 1328. Accordingly,

because Plaintiff has failed to meet the heightened pleading standard set in place by Rule 9(b), Plaintiff has failed to state a cause of action against Cypress Wyoming upon which relief could be granted.

### B. Subject Matter Jurisdiction

Cypress Wyoming argues that to bring suit under the FCA, the Plaintiff must allege fraud from an original source of the information. 31 U.S.C. 3730(e)(4)(A). However Cypress Wyoming is incorrect in this assertion. The original source requirement only applies if Plaintiff's allegations were similar to or substantially the same as allegations which were publicly disclosed. Id. The Eleventh Circuit has held that the "'original source' inquiry only becomes necessary once a court makes a factual determination that the particular *qui tam* suit before it was based upon information that was publicly disclosed." United States *ex rel.* Williams v. NEC Corp., 931 F.2d 1493, 1500 (11th Cir. 1991). Since there are no assertions that Plaintiff relied upon publicly disclosed information, this Court does not reach the question of whether Plaintiff was an original source of that information.

Cypress Wyoming's attempt to make an argument for lack of subject matter jurisdiction is better suited for discussion concerning the pleading standard of Rule 9(b). What Cypress Wyoming is really challenging is the sufficiency of Plaintiff's allegations, rather than this Court's power to hear Plaintiff's case. In asserting that Plaintiff has

"never worked at, and was never affiliated with, the hospital operated by Cypress Wyoming" and that due to this Plaintiff's allegations are "predictive and speculative," Cypress Wyoming is merely restating its argument that Plaintiff has failed to plead with particularity as required by Rule 9(b). This Court has dealt with those arguments above and cannot now say that it lacks subject matter jurisdiction as to Cypress Wyoming in the instant case.

### C. Lack of Connection to Cypress Wyoming

Plaintiff's Complaint also fails to show that Cypress Wyoming is in fact the same entity as Cypress Florida. Plaintiff's allegations on this point are tenuous at best. The only reference of fraud made by Plaintiff to Cypress Wyoming is a comment made by the administrator of the Cypress Florida hospital, Bird. Bird allegedly stated that doctors in the Cypress "system," and who were employed at the hospital managed by Cypress Wyoming, get the highest bonuses by following the same fraudulent scheme in place at Cypress Florida. As stated above, that allegation fails to meet the heightened pleading standard of Rule 9(b). And, although Plaintiff does allege that the current administrator and a few key personnel of Cypress Florida also happen to be members or executive officers of Cypress Wyoming, Plaintiff does not allege any facts which would establish that the two entities are indeed the same entity. Without such a showing, and without any

independent allegations against Cypress Wyoming, Plaintiff has failed to show that Cypress Wyoming should be joined as a party in this action.[3]

Moreover, Plaintiff's Motion to Amend fails to adequately add any allegations which would satisfy a showing that Cypress Wyoming should be joined to this litigation. Because of these deficiencies, it is improper for this Court to continue to include Cypress Wyoming as a party to this lawsuit. Therefore, the dismissal of Plaintiff's Complaint as against Cypress Wyoming is with prejudice.

### D. Attorneys' Fees

Pursuant to the FCA, this Court may award attorneys' fees to a defendant if the defendant prevails and the plaintiff's action was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. 3730(d)(4). Although both Cypress Wyoming and Cypress Florida have shown that Plaintiff's pleading is inadequate, neither deserves an award of attorneys' fees. Plaintiff's complaint was not clearly frivolous or vexatious. As against Cypress Florida, this is revealed through Plaintiffs inadequate yet strong allegations. Plaintiff does need to cure his allegations, specifying the particulars of his allegations against Cypress Florida, to bring his Complaint within the requisite pleading standard; however such cure is not beyond mere

---

[3] Because Plaintiff has failed to show that Cypress Wyoming is a proper party to this action, Plaintiff cannot use the jurisdictional grant of 31 U.S.C. § 3732 to establish personal jurisdiction. Consequently, and because Plaintiff has failed to show Cypress Wyoming has any minimum contacts with this forum, this Court also cannot say it has personal jurisdiction over Cypress Wyoming. This Court does not reach the question of venue as that is a question of convenience for the litigants decided only after this Court's power to hear the case has been affirmatively established.

Case No. 1:09-CV-137-SPM-GRJ

amendments to his Complaint. Cypress Florida is not entitled to an award of attorneys' fees.

Against Cypress Wyoming, Plaintiff's allegations are severely lacking in showing that Cypress Wyoming and Cypress Florida are the same entity. Indeed, Plaintiff has failed to show why Cypress Wyoming should even be a joined as a party to this litigation. However, this Court finds that this error is more ascribed to Plaintiff's mistake than it is to clear frivolousness or intentional harassment. Therefore, an award for Cypress Wyoming's attorneys' fees would not be proper.

### E. Leave to Amend

Because the dismissal of Plaintiff's Complaint against Cypress Wyoming is with prejudice, this Court will not grant the Plaintiff leave to amend as to Cypress Wyoming. However, Plaintiff's allegations as against Cypress Florida are not outside the realm of cure. Plaintiff adequately addresses the deficiencies of his allegations as to the sixteen patient charts by including the specific billing details that Plaintiff failed to include in his original complaint. However, for Plaintiff's allegations concerning false place of service and churning, Plaintiff must produce the details of the claims submitted to a government healthcare program. In Plaintiff's Motion to Amend, Plaintiff includes the additional nursing home and outpatient records he will produce. However, these records must reveal the "facts as to time, place and substance of the defendant's alleged fraud," <u>Atkins</u>,

470 F.3d at 1357 (citation omitted), if they are to survive Rule 9(b)'s heightened pleading standard. Accordingly, this Court grants Plaintiff leave to amend his Complaint as against Cypress Florida, and thus the dismissal of Plaintiff's Complaint as against Cypress Florida is without prejudice.

## IV. ORDER

Based on the foregoing it is hereby ORDERED and ADJUDGED that

1. Defendant Cypress Florida's Motion to Dismiss (doc. 31) is GRANTED, and Plaintiff's Complaint as to Cypress Florida is dismissed without prejudice.

2. Defendant Cypress Wyoming's Motion to Dismiss (doc. 26) is GRANTED, and Plaintiff's Complaint as to Cypress Wyoming is dismissed with prejudice.

3. Plaintiff's Motion to Amend Complaint (doc. 38) is GRANTED as to Cypress Florida and DENIED as to Cypress Wyoming.

DONE and ORDERED on this 12th day of July, 2011.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Senior United States District Judge